UNITED STATES DISTRICT COURT
IN AND FOR THE MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

| | |
|---|---|
| SEAN KOW, individually, | ) CASE NO.: |
| | ) DIV.: |
| Plaintiff, | ) |
| | ) |
| vs. | ) **COMPLAINT AND DEMAND** |
| | ) **FOR JURY TRIAL** |
| BANK OF AMERICA, N.A., (a/k/a | ) |
| BANK OF AMERICA, NATIONAL | ) |
| ASSOCIATION) a Delaware | ) |
| corporation, | ) |
| | ) |
| Defendant(s). | ) |
| | / |

### COMPLAINT

COMES NOW, Plaintiff SEAN KOW (hereinafter "KOW" or "Plaintiff"), by and through his undersigned counsel, hereby sues the Defendant BANK OF AMERICA, N.A. (a/k/a BANK OF AMERICA, NATIONAL ASSOCIATION) (hereinafter "BOA" or "Defendant"), and alleges as follows:

### INTRODUCTION

1.      This is an action for unlawful harassment and discrimination based on race, sexual orientation, and medical condition, in violation of Title VII of the United States Civil Rights Act of 1964, 42 U.S.C. §§ 2000e, *et seq*. (hereinafter referred to generally as "Title VII"), and the Florida Civil Rights Act of 1992, Fla. Stat. §§ 760.01, *et seq*. (hereafter referred to generally as "FCRA"); as well as an action for personal injuries and damages suffered and/or incurred by Plaintiff as

direct and proximate result of Defendant's intentional and negligent infliction of emotional distress.

2.     Defendant owed a duty to Plaintiff, as a BOA employee, to operate and maintain the workplace environment free and clear of the proscribed discrimination and harassment pursuant to Title VII and the FCRA. However, Defendant failed to do so, and even failed to act in a reasonable and timely manner to remedy the discriminatory conditions Plaintiff was working under, in turn, allowing (implicitly authorizing) retaliatory actions against Plaintiff based on pretextual grounds.

3.     The retaliatory and hostile actions perpetrated against Plaintiff, thereby ultimately lead to Plaintiff's constructive termination (*i.e.*, the proverbial middleman "between a rock and a hard place"), where he was left with a choice between putting food on the table or continuing to be treated like less-than a human five (5) days per week, at Defendant's Barna Branch.

4.     As a result of Defendant's violations of Title VII and the FCRA, exhibited in the policies, patterns, and procedures administered during Plaintiff's time as Defendant's employee, and through its habitual acts and omissions—some being willful *and* wanton—Plaintiff received less protection against harassment and discrimination than did his Caucasian (or white) peers, or the heterosexual ("straight") coworkers. Plaintiff was singled out *daily* by Defendant's supervisorial and managerial team at the subject branch of BoA—he was even denied access to

the restrooms despite his medical condition (caused by the emotional trauma he was put through by Defendant), then made fun of because of the way he walked.

5.     None of Plaintiff's coworkers, all of which were non-Black heterosexual people, were harassed by Defendant's supervisors and management team, nor were they made fun of for being heterosexual. Yet, when Plaintiff attempted to engage in the protected act of filing an internal BoA complaint to the Human Resources Department at BoA ("HR"), this got substantially worse for Plaintiff, and he soon was forced out of BoA for on pretextual grounds.

6.     Plaintiff has and will continue to be a valuable asset to his coworkers, but, despite it being Plaintiff's dream to be a banker, Plaintiff's has been left hopeless and emotionally and mentally scared after being violated by Defendant's employees, agents, managers, officers, and/or other employees or representative, as well as Defendant's own clientele.

7.     In fact, Defendant knew or should have known about the violations at all relevant times hereto, yet nothing meaningful was done—and, in retaliation for speaking out of turn (something a gay, black man at BoA Barna is not allowed to do), Plaintiff was pushed out for based on the fact that he was different from his coworkers and the client—Plaintiff is an Jamaican American, gay man who did not fit the supervisor's and/or management's picture of what a BoA employee looks like (preferably white males) or where a BoA employee's sexual orientation should fall (preferably heterosexual).

## PARTIES

8.      Plaintiff is a natural person who, at the time of filing this Complaint, resides in the State of Florida.

9.      Plaintiff, at all times relevant hereto, was "employed" by Defendant as that term is defined by Fla. Stat. §§ 760.01 *et seq.*, in Titusville, Florida, as a "Relationship Banker" for one of Defendant's branches located in Brevard County, FL.

10.      Defendant is incorporated in the State of Delaware, with its headquarters and/or principal place of business located at 100 N Tyron St, Charlotte, North Carolina 28255.

11.      Defendant is registered and licensed to do business in the State of Florida, wherein it provides goods and/or services to Floridians.

12.      Defendant was, at all times relevant hereto, Plaintiff's "employer," as that term is defined by 42 U.S.C. § 2000e(b) and Fla. Stat. §§ 760.01, *et seq.*

## JURISDICTION & VENUE

13.      This Court has subject matter jurisdiction over the instant dispute, pursuant to 28 U.S.C. § 1332, because the amount in controversy exceeds Seventy-Five-Thousand-Dollars ($75,000.00), exclusive of interest and attorneys' fees, and the parties are citizens of different states.

14.      There exists complete diversity among the adverse parties in this case, because Plaintiff KOW is a citizen of Florida at the time this lawsuit was filed, pursuant to § 1391(c)(1), and Defendant BOA is a citizen of (or domiciled in) North

Carolina, where its headquarters and principal place of business is located, and Delaware, its state of incorporation, pursuant to § 1391(c)(2); thereby establishing complete diversity among the adverse parties in this action as required by § 1332.

15.     Venue is proper in this Court, pursuant to § 1391(b)(2), because plaintiff is domiciled in the State of Florida, all acts herein complained of occurred within the State of Florida, at or near 2600 Barna Avenue, Titusville, Florida 32780 ("Bank of America Barna") (hereinafter the "Barna Branch"), which is situated within Brevard County, Florida.

16.     Therefore, this Court has subject matter jurisdiction, pursuant to § 1332, over the causes of action in this case, because the amount in controversy in this lawsuit exceeds the federal jurisdictional minimum and there is complete diversity among the adverse parties to this action.

### ADMINISTRATIVE REMEDIES EXHAUSTED

17.     Prior to filing this action, Plaintiff filed a Charge of Discrimination ("Charge") with the Equal Employment Opportunity Commission ("EEOC") and the Florida Commission on Human Relations ("FCHR"), on or about September 14, 2020, attached hereto as Exhibit "A."

18.     Plaintiff received a Notice of Right to Sue and Charge of Discrimination letter, dated May 4, 2021, from the agencies. and he has filed the instant action before this Court within ninety (90) days of his receipt of same.

19.     Accordingly, Plaintiff has authority to file the instant action and he is filing this Complaint within four (4) years of the adverse actions complained of.

## FACTUAL ALLEGATIONS

20.    At all times relevant hereto, Plaintiff was an employee at Defendant's Barna branch, located at the Barna Branch.

21.    Plaintiff was hired by Defendant on or about June 17, 2019, as a "Relationship Banker."

22.    Prior to working at the Barna Branch for Defendant, Plaintiff worked for Defendant at two (2) other locations (Cocoa Beach and Merritt Island), where he gained experience and expertise, and never received any complaints from his supervisors, managers, or co-workers.

23.    At all times relevant hereto, Plaintiff was a model employee.

24.    Plaintiff excelled at his job—so much so that he was awarded the merit-based "Bronze Reward" by recommendation of his work colleagues at the Cocoa Beach and Merritt Island branches.

25.    Leading up to Plaintiff's transfer to the Barna Branch, Plaintiff gained experience at both the Cocoa Beach and Merritt Island branches where no "disrespectful" or "aggressive" allegations were made against Plaintiff.

26.    Plaintiff's upward trajectory in in his Bank of America career came to an abrupt halt, however, after being transferred to Defendant's Barna branch in or around October of 2019.

27.    Shortly after transferring to Defendant's Barna Branch, Plaintiff almost immediately started experience blatantly adverse and disparate treatment from the Branch's administration and management teams, who in fact facilitated

and perpetrated the hostility toward Plaintiff solely because he was different from everyone else on the payroll for Defendant's Barna Branch.[1]

28.    Defendant's management at the Barna Branch even allowed Plaintiff to be mistreated by customers and/or clients of the branch, who similarly disliked him because he was different from everyone else at the Barna Branch, and in the community surrounding the branch.

29.    Plaintiff is, and at all relevant times hereto was, a black, Jamaican-American, homosexual (gay) man, and this is something that Defendant's Barna Branch was not used to, nor were they open to getting used to.

30.    Plaintiff was, at all relevant times hereto, the only black person employed at Defendant's Barna Branch.

31.    Plaintiff was, at all relevant times hereto, the only Jamaican American person employed at Defendant's Barna Branch.

32.    Plaintiff was, at all relevant times hereto, the only gay man employed at Defendant's Barna Branch.

33.    As such, Defendant's management treated Plaintiff differently because Plaintiff was black; because Plaintiff was Jamaican American; and, because Plaintiff was a gay man.

34.    While employed by Defendant at the Barna Branch, Plaintiff was subjected to the following forms of discrimination based on his race, sexual orientation, and disabilities:

---

[1] The intrinsic racial sentiments of the Barna area are widely known after the Mims bombing that killed prominent civil rights leader, Harry T. Moore, just eight miles from the Barna Branch.

a.      Plaintiff's supervisor, Dawn Kling allowed racist sentiments in the workplace from co-workers *and* clients or customers, which directly affected Plaintiff's work performance.

b.      While Plaintiff was doing his job at the Barna Branch satisfactorily, the Barna Branch clients would often times harass Plaintiff with racist and homophobic micro aggressions, which Kling knew about and failed to remedy, unlike at the Cocoa Beach and Merritt Island branches.

c.      Kling used the racist and homophobic environment against Plaintiff by nitpicking and attacking Plaintiff when he was made severely uncomfortable and offended by the Barna Branch clients, going as far as to reinforce the clients' racist and homophobic bases for their treatment of Plaintiff in the workplace.

d.      Plaintiff's co-workers often teased him about personal characteristics outside of his control that they offensively perceived as indicative of his sexual orientation, such as the way Plaintiff walked (calling it a "sashay"), and his use of rainbow ribbons on his bags, or other colorful items left in and around his desk.

e.      Plaintiff was mocked by Barna Branch employees, co-workers, and even his supervisors or superiors about his use of

8

makeup, because Defendant's Barna Branch did not agree with men wearing makeup like a girl, and they though it would frighten their clientele (mostly Titusville residents);

f.   Plaintiff was mocked by Barna Branch employees and co-workers for walking like a female;

g.   Plaintiff was denied personal time off for a death in his family[2], while other Barna Branch employees were allowed to take short-noticed PTO for family members passing away; Plaintiff was unable to attend the funeral ceremony with his family because of this disparate treatment; and,

h.   Other misconduct and mistreatment to be discovered during discovery.

35.   These discriminatory practices and/or actions were so severe and pervasive that Plaintiff was forced to either accept the treatment or quit his job, because no matter what he did to try and fix the problem, Defendant continued to facilitate and/or allow the discrimination to continue as though it was part of his job duties.

36.   Prior to his resignation, Plaintiff made several attempts to remedy the situation internally through Defendant's policies and procedures.

---

[2] On or about December 27, 2020, Plaintiff's dear uncle passed away and Plaintiff was unable to see or speak to him before they took him off life support. Defendant's Human Resources (HR) representative(s) later admitted that Plaintiff should not have been denied a final embrace with his uncle before passing away, and also that Plaintiff should have been approved for PTO to attend the ceremony and memorial service.

37.     Plaintiff enlisted the help of Defendant's Human Resources ("HR") to help fix the problem and cure his suffering at the hands of Kling and the Barna Branch managerial team.

38.     Plaintiff obtained the HR phone number from his former manager, Mr. Mike Bennice, on November 1, 2019, with plans to quit his job. However, Bennice pleaded Plaintiff to remain as an employee, and Plaintiff eventually decided to keep trying instead of giving up and quitting a job he loved.

39.     Upon information and belief, Bennice pleaded for Plaintiff to keep working and give Barna Branch another shot because Bennice believed (from his managerial position) that Plaintiff was in every way a model employee for Bank of America.

40.     Plaintiff later reached out to HR on or about November 26, 2019 (within one (1) month after starting at the Barna Branch), due to a combative and offensive meeting hosted by Kling earlier that day, on November 26, 2019, regarding an unjustly administered letter of education regarding Plaintiff's timekeeping.

41.     The next day, the emotional damages of this toxic and hostile workplace environment forced Plaintiff to seek medical treatment due to severe symptoms of depression and side effects from the daily discrimination and hostile work environment, including but not limited to the following symptoms and side effects: anxiety; chronic nausea; chronic vomiting; and GERD.

42.     Plaintiff had never experienced any of these things prior to working at the Barna Branch for Defendant.

43.     Plaintiff's health issues began affecting him at work, so he promptly notified Defendant and/or Defendant's representatives, agents, employees, officers, managers, or other staff designated for such notice, and provided the appropriate doctor's note(s).

44.     Instead of accommodating Plaintiff for his medical limitations, his supervisors at the Barna Branch exacerbated them by constantly harassing Plaintiff incessantly on his sick days and berating him when he needed bathroom breaks to relieve himself (now more frequently needed due to the symptoms/side effects mentioned above).

45.     Plaintiff was so aggressively deprived of his basic human rights to utilize the restroom that he had to print out and distribute informational materials regarding bathroom usage in the workplace to his supervisors, as well as obtaining extraordinary notes from his doctor.

46.     Despite Kling being in a position of power at the Barna Branch, as the Financial Center Manager, instead of doing her duty to protect and ensure against unhealthy work environments, discrimination, and harassment, and the emotional and physical safety of the Barna Branch employees—all of them equally—Kling told Plaintiff to simply "grin and bear it" (referring to the discriminatory and harassing treatment Plaintiff was experiencing), in a meeting, on December 4, 2019.

47.   Due to Defendant's lack of reasonable care and substandard workplace, the racist, homophobic, and ableist workplace continued to get worse at Plaintiff's own expense.

48.   In a final meeting with Kling, on January 17, 2020, Kling administered yet another unwarranted and pretextual "Letter of Education" for Plaintiff that resulted in Kling screaming at Plaintiff and ordering him to accept the unwanted and unlawful discriminatory, hostile, and harassing workplace environment.

49.   This was the last straw for Plaintiff; Plaintiff could no longer endure the physically and emotionally overwhelming treatment from Defendant at the Barna Branch and had to make the decision—for his physical and mental well-being, and his future career—to resign from his position and constructively terminate his employment with Defendants before any more damage was done.

50.   Plaintiff was therefore forced to resign on or about January 21, 2020, from his job at the Barna Branch for Defendant.

51.   Despite Defendants' pretextual adverse action against Plaintiff, Plaintiff had always handled his job and clients appropriately according to Standards set by Defendants. So much so, that Plaintiff even received praises from clients in the form of Customer Surveys wherein Plaintiff was praised for his customer service and abilities at his job.

52.   Other than a single Timekeeping Policy Reminder in July 2019, Plaintiff excelled as a Relationship Banker for Defendant, and was awarded the

"Bronze Reward" by recommendation of his work colleagues at the Cocoa Beach and Merritt Island branches for Defendant.

53.     Plaintiff expressed his concerns about discriminatory practices at Defendants' Barna Branch to Branch Manager Aaron Meeks, on multiple occasions, but nothing was ever done internally by Defendant to remedy the work environment.

54.     Due to the discriminatory hiring practices at the Barna Branch, Plaintiff was the only Jamaican American male working at the Barna Branch, as well as the only openly gay male employee at the Barna Branch, during the time period of October 2019 to January 2020.

55.     Defendant's Barna Branch favored hiring non-black and non-gay employees.

56.     Due to the herein described [mis]conduct of Defendant, Plaintiff suffered physically, mentally, and emotionally to the point where he has been unable to seek meaningful employment as a result of the trauma and must take medication, such as antidepressants, daily to treat the emotional distress.

57.     As a direct and proximate result of Defendant's conduct and behavior, Plaintiff has been diagnosed with depression and anxiety, chronic nausea and vomiting, and GERD.

58.     Prior to his employment at the Barna Branch, Plaintiff never suffered from any of the herein described conditions.

59.     Due to Defendant's unfair treatment of Plaintiff, the ramifications of Defendant's conduct and behavior have manifested through Plaintiff's new and ongoing medical issues and caused a life-altering effect on Plaintiff's quality of life and future earning capacity and employment opportunities.

60.     The Barna Branch is situated in an area of Florida that is historically known for racism. For example, less than eight (8) miles from the Barna Branch is where the horrific Mims bombing took place, which killed prominent Civil Rights leader, Harry T. Moore and his wife, Harriet Moore, as they slept during the night of December 25, 1951.

61.     The historical racism surrounding the Barna Branch contributes to the practices of Defendant's Barna Branch itself, and the culture within Defendant's workplace at this branch.

62.     For example, when Plaintiff was doing his job adequately and to the best of his ability, it was not uncommon for Defendant's clientele at the Barna Branch to resort to racist and homophobic micro-aggressions, which Plaintiff's supervisors failed to mitigate and implicitly supported when Plaintiff complained. The Barna Branch sided with the clientele no matter how mean, racist, and/or homophobic they were towards Plaintiff.

63.     Instead of fulfilling her duty as Plaintiff's supervisor at the Barna Branch to protect and ensure the emotional and physical safety of Plaintiff (an employee), Kling (supervisor) told Plaintiff to simply, "grin and bear it," in a December 4, 2019, meeting.

64.     Upon information and belief, the non-black and non-gay employees were not asked to "grin and bear it" in similar situations.

65.     When the Barna Branch no longer wanted to have an Jamaican American gay male employee on their payroll, they began creating a narrative around Plaintiff that was pretextual and otherwise entirely fictional. For instance, Defendant claims that Plaintiff was slamming things and being aggressive in a meeting on November 26, 2019. However, the recorded version of this meeting evidenced no such door-slamming, exemplifying Defendant's practice of grossly mischaracterizing and exaggerating Plaintiff's behavior, a running theme throughout Plaintiff's employment at Defendant's Barna Branch.

## COUNT I —
### DISCRIMINATION BASED ON RACE
### (Fla. Stat. §§ 760.01, *et seq.*)

66.     Plaintiff incorporates the allegations set forth in Paragraphs One (1) through Fifty-Two (52), as though fully set forth herein, and further alleges the following:

67.     Plaintiff, a Jamaican-American, homosexual male, was, at all relevant times hereto, an "employee" of Defendant's and a member of a protected class of individuals as defined by Fla. Stat. § 760.01 et seq.

68.     Plaintiff has filed a timely charge of discrimination with the EEOC and FCHR, and thus has exhausted his administrative remedies.

69.    Plaintiff is a gay, black man who is an. "employee" for Defendant and therefore falls within a protected group of individuals that shall not be discriminated against based on their race.

70.    Plaintiff engaged in protected activities as an employee for Defendant, including but not limited to use of Defendant's internal policies for rejecting and remedying racial discrimination and harassment at the workplace.

71.    Plaintiff has a right to be free from reprisal against him for engaging in these activities.

72.    During his employment, Plaintiff formally and informally lodged complaints of race discrimination by Defendant's employees, agents, representatives, and/or offices, as per Defendant's policies and procedures for complaints of such nature.

73.    However, Plaintiff's supervisors, managers, coworkers, and clients continued treating (harassing) him like an outcast (discriminating against him) because he was the only Jamaican-American working in the Barna Branch, and the only black person on Defendant's payroll at this branch.

74.    Plaintiff was a member of a protected class, and engaged in protected activities, including but not limited to the use of Defendant's internal policies for rejecting and remedying racial discrimination and hostile workplace conduct.

75.    Plaintiff has a right to be free from reprisal against him for engaging in these activities.

76.     Plaintiff was subjected to racial epithets and other racial discrimination while employed by Defendants at the Barna Branch, even after notifying Defendant of this unlawful conduct, and it continued to occur until Plaintiff was forced to continue suffering the treatment or resign.

77.     The racial discrimination suffered by Plaintiff included but is not limited to the following:

   a.     Being called or referred to as racially derogatory names, directly to Plaintiff's face and/or behind his back;

   b.     Public humiliation and repeated harassment by Defendant's employees, representative, agents, or other assigns, and by Defendant's clientele;

   c.     Being denied use of the restrooms and water fountains; and,

   d.     Other instances of racial discrimination as described more fully above.

78.     The stated reasons, other than admissions of discrimination, for Defendant's conduct, repeated discipline, reprisal, and disparate treatment of Plaintiff were not the true reasons for Defendant's adverse actions against Plaintiff, but, instead, were pretext to hide Defendant's discriminatory animus.

79.     Defendant's conduct as alleged at length herein constitutes discrimination based on race and/or color in violation of the Florida Civil Rights Act of 1992, Fla. Stat. §§ 760.01, et seq.

80.     Plaintiff requests relief as described in the Prayer for Relief Below.

**COUNT II —**
**DISCRIMINATION BASED ON RACE**
**(42 U.S.C. §§ 2000e, *et seq.*)**

81.     Plaintiff incorporates the allegations set forth in Paragraphs One (1) through Fifty-Two (52), as though fully set forth herein, and further alleges the following:

82.     Plaintiff, a Jamaican-American, homosexual male, was, at all relevant times hereto, an "employee" of Defendant's and a member of a protected class of individuals as defined by 42 U.S.C. §§ 2000e et seq.

83.     Plaintiff has filed a timely charge of discrimination with the EEOC and FCHR, and thus has exhausted his administrative remedies.

84.     Plaintiff is a gay, black man who is an. "employee" for Defendant and therefore falls within a protected group of individuals that shall not be discriminated against based on their race.

85.     Plaintiff engaged in protected activities as an employee for Defendant, including but not limited to use of Defendant's internal policies for rejecting and remedying racial discrimination and harassment at the workplace.

86.     Plaintiff has a right to be free from reprisal against him for engaging in these activities.

87.     During his employment, Plaintiff formally and informally lodged complaints of race discrimination by Defendant's employees, agents, representatives, and/or offices, as per Defendant's policies and procedures for complaints of such nature.

88.     However, Plaintiff's supervisors, managers, coworkers, and clients continued treating (harassing) him like an outcast (discriminating against him) because he was the only Jamaican-American working in the Barna Branch, and the only black person on Defendant's payroll at this branch.

89.     Plaintiff was a member of a protected class, and engaged in protected activities, including but not limited to the use of Defendant's internal policies for rejecting and remedying racial discrimination and hostile workplace conduct.

90.     Plaintiff has a right to be free from reprisal against him for engaging in these activities.

91.     Plaintiff was subjected to racial epithets and other racial discrimination while employed by Defendants at the Barna Branch, even after notifying Defendant of this unlawful conduct, and it continued to occur until Plaintiff was forced to continue suffering the treatment or resign.

92.     The racial discrimination suffered by Plaintiff included but is not limited to the following:

   a.     Being called or referred to as racially derogatory names, directly to Plaintiff's face and/or behind his back;

   b.     Public humiliation and repeated harassment by Defendant's employees, representative, agents, or other assigns, and by Defendant's clientele;

   c.     Being denied use of the restrooms and water fountains; and,

      d.    Other instances of racial discrimination as described more fully above.

93.    The stated reasons, other than admissions of discrimination, for Defendant's conduct, repeated discipline, reprisal, and disparate treatment of Plaintiff were not the true reasons for Defendant's adverse actions against Plaintiff, but, instead, were pretext to hide Defendant's discriminatory animus.

94.    Defendant's conduct as alleged at length herein constitutes discrimination based on race and/or color in violation of Title VII of the U.S. Civil Rights Act, 42 U.S.C. §§ 2000e et seq.

95.    Plaintiff requests relief as described in the Prayer for Relief Below.

**<u>COUNT III —</u>**
**DISCRIMINATION BASED ON SEXUAL ORIENTATION**
**(Fla. Stat. §§ 760.01, *et seq.*)**

96.    Plaintiff incorporates the allegations set forth in Paragraphs One (1) through Fifty-Two (52), as though fully set forth herein, and further alleges the following:

97.    Plaintiff, a Jamaican-American, homosexual male, was, at all relevant times hereto, an "employee" of Defendant's and a member of a protected class of individuals as defined by Fla. Stat. § 760.01 et seq.

98.    Plaintiff has filed a timely charge of discrimination with the EEOC and FCHR, and thus has exhausted his administrative remedies.

99.   Plaintiff is a gay, black man who is an "employee" for Defendant and therefore falls within a protected group of individuals that shall not be discriminated against based on their race.

100.   Plaintiff engaged in protected activities as an employee for Defendant, including but not limited to use of Defendant's internal policies for rejecting and remedying sexual orientation discrimination and homophobic harassment at the workplace.

101.   Plaintiff has a right to be free from reprisal against him for engaging in these activities.

102.   During his employment, Plaintiff formally and informally lodged complaints of sexual orientation discrimination by Defendant's employees, agents, representatives, and/or offices, as per Defendant's policies and procedures for complaints of such nature.

103.   However, Plaintiff's supervisors, managers, coworkers, and clients continued treating (harassing) him like an outcast (discriminating against him) because he was the only homosexual male working in the Barna Branch.

104.   As a homosexual male, Plaintiff was a member of a protected class, and engaged in protected activities, including but not limited to the use of Defendant's internal policies for rejecting and remedying sexual orientation discrimination and hostile workplace conduct towards him for being a homosexual male.

105.    Plaintiff has a right to be free from reprisal against him for engaging in these activities.

106.    Plaintiff was subjected to sexual orientation epithets (homophobic treatment) and other sexual orientation discrimination while employed by Defendants at the Barna Branch, even after notifying Defendant of this unlawful conduct, and it continued to occur until Plaintiff was forced to continue suffering the treatment or resign.

107.    The sexual orientation discrimination suffered by Plaintiff included but is not limited to the following:

  a. Being called or referred to as homophobic names, directly to Plaintiff's face and/or behind his back;

  b. Public humiliation and repeated sexual orientation harassment by Defendant's employees, representative, agents, or other assigns, and by Defendant's clientele based on Plaintiff's being an openly gay male;

  c. Being mocked for walking like a girl (calling his walk a "sashay");

  d. Mocking Plaintiff's "gay pride" décor and personal items;

  e. Mocking Plaintiff's makeup;

  f. Being denied use of the restrooms and water fountains; and,

  g. Other instances of racial discrimination as described more fully above.

108.   The stated reasons, other than admissions of discrimination, for Defendant's conduct, repeated discipline, reprisal, and disparate treatment of Plaintiff were not the true reasons for Defendant's adverse actions against Plaintiff, but, instead, were pretext to hide Defendant's discriminatory animus.

109.   Defendant's conduct as alleged at length herein constitutes discrimination based on race and/or color in violation of the Florida Civil Rights Act of 1992, Fla. Stat. §§ 760.01, et seq.

110.   Plaintiff requests relief as described in the Prayer for Relief Below.

<u>**COUNT IV —**</u>
**DISCRIMINATION BASED ON SEXUAL ORIENTATION**
**(42 U.S.C. §§ 2000e, *et seq.*)**

111.   Plaintiff incorporates the allegations set forth in Paragraphs One (1) through Fifty-Two (52), as though fully set forth herein, and further alleges the following:

112.   Plaintiff, a Jamaican-American, homosexual male, was, at all relevant times hereto, an "employee" of Defendant's and a member of a protected class of individuals as defined by 43 U.S.C. §§ 2000e et seq.

113.   Plaintiff has filed a timely charge of discrimination with the EEOC and FCHR, and thus has exhausted his administrative remedies.

114.   Plaintiff is a gay, black man who is an "employee" for Defendant and therefore falls within a protected group of individuals that shall not be discriminated against based on their race.

115.    Plaintiff engaged in protected activities as an employee for Defendant, including but not limited to use of Defendant's internal policies for rejecting and remedying sexual orientation discrimination and homophobic harassment at the workplace.

116.    Plaintiff has a right to be free from reprisal against him for engaging in these activities.

117.    During his employment, Plaintiff formally and informally lodged complaints of sexual orientation discrimination by Defendant's employees, agents, representatives, and/or offices, as per Defendant's policies and procedures for complaints of such nature.

118.    However, Plaintiff's supervisors, managers, coworkers, and clients continued treating (harassing) him like an outcast (discriminating against him) because he was the only homosexual male working in the Barna Branch.

119.    As a homosexual male, Plaintiff was a member of a protected class, and engaged in protected activities, including but not limited to the use of Defendant's internal policies for rejecting and remedying sexual orientation discrimination and hostile workplace conduct towards him for being a homosexual male.

120.    Plaintiff has a right to be free from reprisal against him for engaging in these activities.

121.    Plaintiff was subjected to sexual orientation epithets (homophobic treatment) and other sexual orientation discrimination while employed by

Defendants at the Barna Branch, even after notifying Defendant of this unlawful conduct, and it continued to occur until Plaintiff was forced to continue suffering the treatment or resign.

122.   The sexual orientation discrimination suffered by Plaintiff included but is not limited to the following:

a.   Being called or referred to as homophobic names, directly to Plaintiff's face and/or behind his back;

b.   Public humiliation and repeated sexual orientation harassment by Defendant's employees, representative, agents, or other assigns, and by Defendant's clientele based on Plaintiff's being an openly gay male;

c.   Being mocked for walking like a girl (calling his walk a "sashay");

d.   Mocking Plaintiff's "gay pride" décor and personal items;

e.   Mocking Plaintiff's makeup;

f.   Being denied use of the restrooms and water fountains; and,

g.   Other instances of racial discrimination as described more fully above.

123.   The stated reasons, other than admissions of discrimination, for Defendant's conduct, repeated discipline, reprisal, and disparate treatment of Plaintiff were not the true reasons for Defendant's adverse actions against Plaintiff, but, instead, were pretext to hide Defendant's discriminatory animus.

124.   Defendant's conduct as alleged at length herein constitutes discrimination based on race and/or color in violation of Title VII of the U.S. Civil Rights Act of 1964, 42 U.S.C. §§ 2000e et seq.

125.   Plaintiff requests relief as described in the Prayer for Relief Below.

## COUNT V —
## REPRISAL/RETALIATION
### (Fla. Stat. §§ 760.01, *et seq.*)

126.   Plaintiff incorporates the allegations set forth in Paragraphs One (1) through Fifty-Two (52), as though fully set forth herein, and further alleges the following:

127.   Plaintiff, a Jamaican-American, homosexual male, was, at all relevant times hereto, an "employee" of Defendant's and a member of a protected class of individuals as defined by Fla. Stat. §§ 760.01 et seq.

128.   Plaintiff has filed a timely charge of discrimination with the EEOC and FCHR, and thus has exhausted his administrative remedies.

129.   During his employment, Plaintiff formally and informally complained of the unlawful discriminatory and harassing practices to Defendant's employees, agents, representative, and/or officers, as per Defendant's company policy, regarding the numerous instances of severe and pervasive racial- and sexual-orientation-based harassment and discrimination that Plaintiff was subjected to while employed by Defendants at its Barna Branch.

130.     Plaintiff engaged in protected activities, including the use of Defendant's internal policies for rejecting and remedying racial and sexual orientation discrimination and hostile workplace conduct.

131.     Plaintiff has a right to be free from reprisal against him for engaging in these activities.

132.     Defendants, by and through its employees, officers, agents, representatives, and other employees or assigns, as well as its own actions and/or inactions, took adverse action against Plaintiff which increased in degree since the time he engaged in protected activities of rejecting and remedying racial and sexual orientation discrimination and hostile workplace conduct.

133.     Defendants knowingly allowed and/or facilitated retaliatory actions against Plaintiff including actions of further racial hate and discrimination, and homophobic sexual-orientation-based discrimination, and harassment by its employees, officers, agents, representative, assigns, and clientele.

134.     Defendant's conduct as alleged above constitutes retaliation based on Plaintiff's engaging in activities protected by the FCRA, Fla. Stat. §§ 760.01 et seq.

135.     The stated reasons for Defendant's conduct, by Defendants, except for any admissions, were not the true reasons, but instead were pretext to hid Defendant's retaliatory animus.

136.     As a result of Defendant's adverse and retaliatory actions, Plaintiff suffered damages as a result of Defendants' retaliation, sustaining injuries

including but not limited to lost wages, benefits, pain and suffering, mental and emotion distress, mental anguish, embarrassment, inconvenience, medical expenses, inter alia.

137.   The acts and/or omissions of Defendant alleged above constitute retaliation based on his opposition, rejections, and disapproval of racial and sexual orientation harassment and discrimination, and a racist and homophobic hostile and/abusive workplace environment.

138.   Defendant has deprived Plaintiff of the enjoyment of all benefits, privileges, terms, and conditions of his employment in violation of the Florida Civil Rights Act of 1992, Fla. Stat. §§ 760.01 et seq.

139.   Plaintiff requests relief as described in the Prayer for Relief Below.

## COUNT VI —
## REPRISAL/RETALIATION
## (42 U.S.C. §§ 2000e, *et seq.*)

140.   Plaintiff incorporates the allegations set forth in Paragraphs One (1) through Fifty-Two (52), as though fully set forth herein, and further alleges the following:

141.   Plaintiff, a Jamaican-American, homosexual male, was, at all relevant times hereto, an "employee" of Defendant's and a member of a protected class of individuals as defined by 43 U.S.C. §§ 2000e et seq.

142.   Plaintiff has filed a timely charge of discrimination with the EEOC and FCHR, and thus has exhausted his administrative remedies.

143.    During his employment, Plaintiff formally and informally complained of the unlawful discriminatory and harassing practices to Defendant's employees, agents, representative, and/or officers, as per Defendant's company policy, regarding the numerous instances of severe and pervasive racial- and sexual-orientation-based harassment and discrimination that Plaintiff was subjected to while employed by Defendants at its Barna Branch.

144.    Plaintiff engaged in protected activities, including the use of Defendant's internal policies for rejecting and remedying racial and sexual orientation discrimination and hostile workplace conduct.

145.    Plaintiff has a right to be free from reprisal against him for engaging in these activities.

146.    Defendants, by and through its employees, officers, agents, representatives, and other employees or assigns, as well as its own actions and/or inactions, took adverse action against Plaintiff which increased in degree since the time he engaged in protected activities of rejecting and remedying racial and sexual orientation discrimination and hostile workplace conduct.

147.    Defendants knowingly allowed and/or facilitated retaliatory actions against Plaintiff including actions of further racial hate and discrimination, and homophobic sexual-orientation-based discrimination, and harassment by its employees, officers, agents, representative, assigns, and clientele.

148.   Defendant's conduct as alleged above constitutes retaliation based on Plaintiff's engaging in activities protected by Title VII of the U.S. Civil Rights Act of 1964, 42 U.S.C. §§ 2000e et seq.

149.   The stated reasons for Defendant's conduct, by Defendants, except for any admissions, were not the true reasons, but instead were pretext to hid Defendant's retaliatory animus.

150.   As a result of Defendant's adverse and retaliatory actions, Plaintiff suffered damages as a result of Defendants' retaliation, sustaining injuries including but not limited to lost wages, benefits, pain and suffering, mental and emotion distress, mental anguish, embarrassment, inconvenience, medical expenses, inter alia.

151.   The acts and/or omissions of Defendant alleged above constitute retaliation based on his opposition, rejections, and disapproval of racial and sexual orientation harassment and discrimination, and a racist and homophobic hostile and/abusive workplace environment.

152.   Defendant has deprived Plaintiff of the enjoyment of all benefits, privileges, terms, and conditions of his employment in violation of Title VII of the U.S Civil Rights Act of 1964, 42 U.S.C. §§ 2000e et seq.

153.   Plaintiff requests relief as described in the Prayer for Relief Below.

## COUNT VII —
## HOSTILE WORK ENVIRONMENT
### (Fla. Stat. §§ 760.01, *et seq.*)

154.   Plaintiff incorporates the allegations set forth in Paragraphs One (1) through Fifty-Two (52), as though fully set forth herein, and further alleges the following:

155.   Plaintiff, a Jamaican-American, homosexual male, was, at all relevant times hereto, an "employee" of Defendant's and a member of a protected class of individuals as defined by Fla. Stat. §§ 760.01 et seq.

156.   Plaintiff has filed a timely charge of discrimination with the EEOC and FCHR, and thus has exhausted his administrative remedies.

157.   During his employment, Plaintiff formally and informally complained of the unlawful discriminatory practices to Defendant employees, agents, representatives, and/or officers, as per Defendant's company policy, regarding the numerous instances of severe and pervasive racial discrimination, sexual orientation discrimination, harassment, and retaliation that Plaintiff was subjected to while employed by Defendants at the Barna Branch.

158.   Plaintiff was, at all relevant times hereto, a member of a protected class, and engaged in protected activities, including but not limited to the use of Defendant's internal policies for rejecting and remedying discrimination and hostile workplace conduct.

159.   Plaintiff has a right to be free from reprisal against him for engaging in these activities.

160.   Defendant, by and through its officers, directors, agents, representatives, or other employees or subordinates, as well as its own actions and inactions, took adverse action against Plaintiff which increased in degree each time Plaintiff rejected or refused the disparate and discriminatory treatment, and continued until he was constructively terminated.

161.   Plaintiff was denied basic human rights, such as access to the restrooms and water fountains at Defendant's Barna Branch.

162.   Defendant's conduct as alleged at length herein constitutes retaliation against Plaintiff based on Plaintiff's race, color, and sexual origin and based on Plaintiff's engaging in activities protected under the FRCA and Civil Rights Act.

163.   The stated reasons for Defendant's conduct, by Defendant, were not the true reasons, other than those rare instances of unofficial or information admissions by Defendants, but instead were pretext to hide Defendant's discriminatory and retaliatory animus.

164.   Defendant retaliated against Plaintiff because Plaintiff was a member of a protected class of individuals and because Plaintiff engaged in activities protected by law, but mainly because Defendant considered Plaintiff an outsider based on his race, color, and sexual orientation.

165.   As a result of Defendant's adverse and retaliatory actions against him, Plaintiff suffered damages including but not limited to lost wages, lost

benefits, inconvenience, loss of dignity, loss of reputation, pain and suffering, mental and emotional distress, and medical expenses, inter alia.

166.    The acts and omissions of Defendant alleged at length herein constitute a hostile work environment against Plaintiff based on his race, color, and sexual orientation, as well as his opposition, rejection, and disapproval of the racial and sexual orientation harassment, discrimination, hostility, and abusive workplace.

167.    Defendant has deprived Plaintiff of the enjoyment of all benefits, privileges, terms, and conditions of his employment, in violation of the Florida Civil Rights Act of 1992, Fla. Stat. §§ 760.01 et seq.

168.    Plaintiff requests relief as described in the Prayer for Relief Below.

### COUNT VIII —
### HOSTILE WORK ENVIRONMENT
### (42 U.S.C. §§ 2000e, *et seq.*)

169.    Plaintiff incorporates the allegations set forth in Paragraphs One (1) through Fifty-Two (52), as though fully set forth herein, and further alleges the following:

170.    Plaintiff, a Jamaican-American, homosexual male, was, at all relevant times hereto, an "employee" of Defendant's and a member of a protected class of individuals as defined by 42 U.S.C. §§ 2000e et seq.

171.    Plaintiff has filed a timely charge of discrimination with the EEOC and FCHR, and thus has exhausted his administrative remedies.

172.   During his employment, Plaintiff formally and informally complained of the unlawful discriminatory practices to Defendant employees, agents, representatives, and/or officers, as per Defendant's company policy, regarding the numerous instances of severe and pervasive racial discrimination, sexual orientation discrimination, harassment, and retaliation that Plaintiff was subjected to while employed by Defendants at the Barna Branch.

173.   Plaintiff was, at all relevant times hereto, a member of a protected class, and engaged in protected activities, including but not limited to the use of Defendant's internal policies for rejecting and remedying discrimination and hostile workplace conduct.

174.   Plaintiff has a right to be free from reprisal against him for engaging in these activities.

175.   Defendant, by and through its officers, directors, agents, representatives, or other employees or subordinates, as well as its own actions and inactions, took adverse action against Plaintiff which increased in degree each time Plaintiff rejected or refused the disparate and discriminatory treatment, and continued until he was constructively terminated.

176.   Plaintiff was denied basic human rights, such as access to the restrooms and water fountains at Defendant's Barna Branch.

177.   Defendant's conduct as alleged at length herein constitutes retaliation against Plaintiff based on Plaintiff's race, color, and sexual origin and

based on Plaintiff's engaging in activities protected under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e et seq.

178.    The stated reasons for Defendant's conduct, by Defendant, were not the true reasons, other than those rare instances of unofficial or information admissions by Defendants, but instead were pretext to hide Defendant's discriminatory and retaliatory animus.

179.    Defendant retaliated against Plaintiff because Plaintiff was a member of a protected class of individuals and because Plaintiff engaged in activities protected by law, but mainly because Defendant considered Plaintiff an outsider based on his race, color, and sexual orientation.

180.    As a result of Defendant's adverse and retaliatory actions against him, Plaintiff suffered damages including but not limited to lost wages, lost benefits, inconvenience, loss of dignity, loss of reputation, pain and suffering, mental and emotional distress, and medical expenses, inter alia.

181.    The acts and omissions of Defendant alleged at length herein constitute a hostile work environment against Plaintiff based on his race, color, and sexual orientation, as well as his opposition, rejection, and disapproval of the racial and sexual orientation harassment, discrimination, hostility, and abusive workplace.

182.    Defendant has deprived Plaintiff of the enjoyment of all benefits, privileges, terms, and conditions of his employment, in violation of Title VII of the U.S. Civil Rights Act of 1964, 42 U.S.C. §§ 2000e et seq.

183.    Plaintiff requests relief as described in the Prayer for Relief Below.

## COUNT IX —
## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
### (Florida Common Law)

184.    Plaintiff incorporates the allegations set forth in Paragraphs One (1) through One-Hundred-Seventy (170), as though fully set forth herein, and further alleges the following:

185.    The foregoing actions by Defendant fully alleged above in support of Counts I through VIII, were intentional, abusive, willful, done in bad faith, and/or done with gross negligence or recklessness.

186.    Moreover, these actions were of the type that Defendant did foresee or should have reasonably foreseen would cause great emotional distress, anxiety, inconvenience, and expense, including attorneys' fees, on the part of Plaintiff.

187.    As such, the actions of Defendant constitute an independent tort.

188.    As a proximate cause of Defendant's actions, Plaintiff has in fact suffered great emotional distress, anxiety, inconvenience, and medical and other expenses, including attorneys' fees.

189.    Defendant is thus liable to Plaintiff for intentional infliction of emotional distress.

190.    Plaintiff requests relief as described in the Prayer for Relief Below.

## COUNT X —
## NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS
### (Florida Common Law)

191.     Plaintiff incorporates the allegations set forth in Paragraphs One (1) through One-Hundred-Seventy-Seven (177), as though fully set forth herein, and further alleges the following:

192.     In the alternative to Count IX, the actions of Defendant were done in a negligent manner and Defendant did foresee or reasonably should have foreseen that such actions would cause great emotional distress, anxiety, inconvenience, and expense, including attorneys' fees, on the part of Plaintiff, and such negligent actions did proximately and directly cause Plaintiff to suffer great emotional distress, anxiety, inconvenience, and expenses, including attorneys' fees.

193.     Due to Plaintiff's several complaints to Defendant's employees, representatives, officers, and/or other assigns, Defendant new and/or should have known of this conduct and failed to correct or remedy the situation.

194.     As such, Defendant did foresee or reasonably should have foreseen that such actions, if gone unmitigated, would cause great distress, anxiety, inconvenience, and expense, including attorneys' fees, on the part of Plaintiff, and such negligent actions or inactions on the part of Defendant, did proximately cause Plaintiff to suffer great emotional distress, anxiety, inconvenience, and medical and other expense, including attorneys' fees.

195.     Defendant is vicariously liable for the negligence of its employees, representatives, officers, and/or other assigns.

196.    As such, Defendants are liable to Plaintiff for negligent infliction of emotional distress, and the damages suffered by Plaintiff therefrom.

197.    Plaintiff requests relief as described in the Prayer for Relief Below.

## **PRAYER FOR RELIEF**

Plaintiff respectfully requests the following relief against Defendant BANK OF AMERICA, N.A.:

a.    An award of economic damages, including lost wages and benefits, backpay, and future pay;

b.    An award of past and future medical expenses incurred for treatment of mental and emotional distress;

c.    An award of compensatory damages for pain and suffering, mental anguish, loss of dignity and reputation; damage to career path; inconvenience; damage to reputation; loss of enjoyment of life; and pain and suffering damages;

d.    An award of punitive damages to be determined by a jury;

e.    An award of attorneys' fees and costs; and,

f.    Any other relief deemed just and proper, including declaratory relief that Plaintiff's rights were violated by Defendant.

## DEMAND FOR JURY TRIAL

WHEREFORE, Plaintiff SEAN KOW, by and through his undersigned counsel, hereby demands a trial by jury on all causes of action so triable, pursuant to the Federal Rules of Civil Procedure on all issues so triable.

DATED: July 28, 2021                    Respectfully submitted,

*/s/Michael G. Mann, Esq.*
MICHAEL G. MANN, ESQ.
Fla. Bar No.: 1020249
**The Cochran Firm Orlando, LLC**
605 East Robinson Street, Suite 140
Orlando, Florida 32801
Tel: (407) 271-8590
Fax: (407) 743-3352
Email: MMann@CochranFirm.com

***Attorney for Plaintiff & Trial Counsel.***

# EXHIBIT "A"

EEOC Form 5 (11/09)

# CHARGE OF DISCRIMINATION

This form is affected by the Privacy Act of 1974.  See enclosed Privacy Act
Statement and other information before completing this form.

| Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|
| ☐ FEPA | |
| ☒ EEOC | 510-2020-05634 |

**Florida Commission On Human Relations** and EEOC

*State or local Agency, if any*

| Name *(indicate Mr., Ms., Mrs.)* | Home Phone *(Incl. Area Code)* | Date of Birth |
|---|---|---|
| **Sean A. Kow** | ■■■■■ | |

| Street Address | City, State and ZIP Code |
|---|---|
| **307 Adams Avenue,  Apt. 12, Cape Canaveral, FL 32920** | |

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I Believe Discriminated Against Me or Others.  *(If more than two, list under PARTICULARS below.)*

| Name | No. Employees, Members | Phone No. *(Include Area Code)* |
|---|---|---|
| **BANK OF AMERICA** | **201 - 500** | **(800) 556-6044** |

| Street Address | City, State and ZIP Code |
|---|---|
| **2600 Barna Ave, Titusville, FL 32780** | |

DISCRIMINATION BASED ON *(Check appropriate box(es).)*

| | | DATE(S) DISCRIMINATION TOOK PLACE |
|---|---|---|
| ☒ RACE  ☐ COLOR  ☒ SEX  ☐ RELIGION  ☐ NATIONAL ORIGIN | | Earliest **10-01-2019**  Latest **01-21-2020** |
| ☒ RETALIATION  ☐ AGE  ☐ DISABILITY  ☐ GENETIC INFORMATION | | |
| ☐ OTHER *(Specify)* | | ☐ CONTINUING ACTION |

THE PARTICULARS ARE *(If additional paper is needed, attach extra sheet(s)):*

I am Black and identify as Gay. I was employed by the above-named company since June 2019, as a
Personal Banker. During my employment, I was subjected to harassment due to my race and sexual
preference by Branch Manager Dawn Kline (White) and Assistant Branch Manager Katherine Powell
(White). The harassment included but was not limited to issuing me 5-6 disciplinary actions related to
tardiness at one time (although I was not late), micromanaging my work, derogatory comments
related to my sexual preference regarding the way I walk among other comments, and at one point
would not let me use the facilities without a doctor's note. No other employee outside of my
protected classes was treated in the same manner. I reported this behavior to Human Resources and
District Manager Gina Morris on various occasions to no avail. After my complaints, I was retaliated
against by being subjected to further unwarranted disciplinary actions and the harassment
increased. On January 21, 2020, I submitted my resignation letter as the workplace had become
hostile.

No reasons were given for the above-named actions.

I believe that I have been discriminated against due to my race, sex, and retaliated for opposing
unlawful discrimination, in violation of Title VII of the Civil Rights Act of 12964, as amended.

| | |
|---|---|
| I want this charge filed with both the EEOC and the State or local Agency, if any.  I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – *When necessary for State and Local Agency Requirements* |
| I declare under penalty of perjury that the above is true and correct. | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief. SIGNATURE OF COMPLAINANT |
| 9/14/20 | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE *(month, day, year)* |
| *Date*        *Charging Party Signature* | |